*Decision will be entered under Rule 50.*

JESSIE G. BROWN, AS EXECUTRIX OF THE LAST WILL AND TESTAMENT OF MILTON HAY BROWN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91093. Promulgated November 24, 1939.

*Albert C. Schlipf, Esq.,* and *Logan Hay, Esq.,* for the petitioner. *Franklin F. Korell, Esq.,* for the respondent.

OPINION.

SMITH: The only question for the determination of the Board is whether the decedent's interest in the trust estate created on December 24, 1923, should be included in his gross estate at the value thereof at the date of his death, and, if not the whole thereof, whether any portion should be so included. The respondent contends that the decedent had a one-third interest in the trust estate and that the total value of that one-third interest at the date of his death, March 12, 1935, namely $241,808.45, should be included in the gross estate. The petitioner, on the other hand, contends that no part of the value of that one-third interest should be so included.

The following provisions of section 302 of the Revenue Act of 1926, as amended by sections 401 and 404 of the Revenue Act of 1934, are applicable to the issues raised:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real, or personal, tangible or intangible, wherever situated, except real property situated outside the United States [as amended by sec. 404, Act 1934]—

(a) To the extent of the interest therein of the decedent at the time of his death * * *;

\*  \*  \*  \*  \*  \*  \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

(d) (1) [As amended by sec. 401.] To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

\*  \*  \*  \*  \*  \*  \*

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth; and

\*  \*  \*  \*  \*  \*  \*

(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

Prior to her death on October 28, 1923, Kate Hay Brown owned an undivided one-half interest in a number of farms and other parcels of real property inherited by her from her father. Upon her death her husband, Stuart Brown, inherited a one-third undivided interest in fee and each of their three children inherited a two-ninths interest in fee in the estate. The heirs decided that it was impracticable to set off their interests in metes and bounds and decided that it was to the interest of all to keep their interests undivided. They therefore created a trust, evidenced by the trust instrument executed on December 24, 1923. Stuart Brown contributed his undivided one-third interest and each of the three children contributed his two-ninths interest to the trust estate, the spouses of the married children joining in the conveyance. Under the trust agreement Stuart Brown was to receive and did receive during his life the income upon his one-third interest in the trust estate and each of the children received the income upon the two-ninths interest contributed by each. After

the death of Stuart Brown, who died intestate on October 26, 1924, each of the three children received the income upon a one-third undivided interest in the trust estate. Under the terms of the trust agreement each of the three children had the right to receive one-third of the income of the trust estate for life. Each also had a limited power of appointment as to one-third of the corpus of the trust estate after the death of Stuart Brown on October 26, 1924.

It is the contention of the respondent first that there should be included in the gross estate of Milton Hay Brown, the decedent herein, the value of one-third of the corpus of the trust estate, admitted to be $241,808.45. He claims that section 302 (d) of the Revenue Act of 1926, as amended by section 401 of the Revenue Act of 1934, warrants such inclusion. That section, however, requires the inclusion in the gross estate of any interest in property "of which the decedent has at any time made a transfer." Since the property transferred to the trust estate by Milton Hay Brown was only a two-ninths interest in the estate of his mother, we shall first consider whether the value of that two-ninths interest is includable in the gross estate.

The respondent cites section 302 (c) of the Revenue Act of 1926 as being applicable to this case. That subdivision of section 302 requires the inclusion in the gross estate of property transferred by the decedent "in contemplation of or intended to take effect in possession or enjoyment at or after his death." No contention is made by the respondent that the transfer made to the trust by Milton Hay Brown on December 24, 1923, was in contemplation of death and the stipulated facts are that at the time of the transfer he was 36 years of age and was suffering from no mortal illness and was in normal health for a man of his age. This stipulation conclusively shows that the transfer to the trust by the decedent was not in contemplation of death. Neither is any contention made by the respondent that the transfer made by Milton Hay Brown on December 24, 1923, was "intended to take effect in possession or enjoyment at or after his death." The decedent, his sisters, and their father all made their transfers to the trust on the date that the trust instrument was executed. The trustees held title to the property after that date and the decedent and his sisters and father had the enjoyment of the income from the property from that date. We therefore are of the opinion that section 302 (c) of the Revenue Act of 1926 has no application to this case.

Section 302 (d) of the applicable statute requires the inclusion in the gross estate of a transfer made by the decedent "by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke." It will be noted that the provision does not require that

the transferor have a power to alter, amend, or revoke the trust instrument. If he has any power to change the enjoyment of the property up to the date of his death the value of the transferred property is includable in the gross estate. The Board and the courts have so held in numerous cases.

The petitioner contends that the transfer by Milton Hay Brown was made prior to the time that the provision contained in section 302 (d) was in effect; that it was a completed transfer prior to the effective date of the statute, and that therefore the value of the transferred property may not be included in the gross estate. It should be noted, however, that section 302 (h) of the Revenue Act of 1926 provides that that section is effective whether the transfer was made before or after the enactment of the Revenue Act of 1926. The Board and the courts have held in numerous cases that transfers made prior to the effective date of the Revenue Act of 1926 are controlled by section 302 (d). All that is necessary to make the subdivision operative is that the transferor shall have up to the date of his death the right to change or alter the enjoyment of the property. See *Bank of New York & Trust Co., Administrator*, 20 B. T. A. 677, 684; *Day Kimball et al., Administrators*, 29 B. T. A. 60; affd., *per curiam* (C. C. A., 2d Cir.), 71 Fed. (2d) 1011; *Luis James Phelps et al., Executors*, 27 B. T. A. 1224; *Mary A. B. duPont Laird et al., Executors*, 29 B. T. A. 196.

In *Frederick Foster et al., Executors*, 31 B. T. A. 769, the Board sustained the respondent's determination that the value of a trust was properly includable in the computation of his gross estate with the following statement:

> The respondent has included the value of the trust corpus, in the amount above set out, in gross estate of the decedent under section 302 (d) of the Revenue Act of 1926. The respondent concedes that the trust was irrevocable, but takes the position that the retained power of the decedent to direct the disposition of the trust property constitutes a power to alter or amend.
>
> The statutory provision cited by the respondent requires the inclusion in gross estate of property transferred in trust by a decedent "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power * * * to alter, amend, or revoke." Under the trust instrument in this case the trust property would go to the grantor's children if he died intestate. But he reserved the power in the trust instrument to provide by will for the holding of the property upon further trusts "for the benefit of such children or their survivor or issue." The power thus retained was one to change materially the enjoyment of the trust property. The grantor could, and did by his will and codicil, divest the children of the remainder interest they would have taken under the trust indenture had he died intestate, and make them life tenants. In this respect the present case differs from that of *Equitable Trust Co. of New York, Administrator of Beresford*, 31 B. T. A. 329, where it was held that under the grantor's retained power she "could not divest the class named as remaindermen but could only designate the proportions in which the members of the class would take." In the instant case, as pointed out above, the grantor could do much more; he could not only change the remainder interests of the

children *inter sese*, but could entirely divest them of any remainder interest. This was a power to materially change the enjoyment of the property, and as said in *Dort* v. *Helvering*, 69 Fed. (2d) 836, if the trust instrument "contain a right to change the enjoyment, it is within the terms of the act." We are of the opinion that the power retained by the decedent to change the enjoyment of the property comes within the provisions of the statute and the trust property should be included in gross estate. See *Porter* v. *Commissioner*, 288 U. S. 436; *Hoblitzelle* v. *United States*, 3 Fed. Supp. 331; *Bank of New York & Trust Co., Administrator*, 20 B. T. A. 677; *H. T. Cook et al., Executors*, 23 B. T. A. 335; affd., 66 Fed. (2d) 995; *Day Kimball et al., Administrators*, 29 B. T. A. 60.

In *Estate of Daniel Guggenheim*, 39 B. T. A. 251, the Board said:

The cited cases [*Helvering* v. *Helmholz*, 296 U. S. 93, and *White* v. *Poor*, 296 U. S. 98] are authority for holding that the mere power to terminate a trust and distribute the proceeds to the beneficiaries is not a power to alter, amend or revoke; but this was not the only power reserved by the settlor. He reserved the power to "alter, define and prescribe the relative interests of the beneficiaries in the trust fund or the income thereof." This is the power which formed the basis of respondent's determination that the trust corpus should be included in his gross estate. The obvious purpose of Congress in enacting section 302 (d), *supra*, was to prevent the avoidance of estate taxes in cases where settlors retained control over trust estates by reserving in themselves the power to alter, amend, or revoke, even though title could not be regained by them. Until the death of the decedent there was always the possibility of the exercise by him of the reserved power to change and alter the relative interests of the beneficiaries. This power to alter and change the economic benefit gave the decedent a substantial control over the trust property, and his death, therefore, was "the source of valuable assurance passing from the dead to the living." *Porter* v. *Commissioner*, 288 U. S. 436. Such power can not be considered a trivial or inconsequential one. *Hoblitzelle* v. *United States*, 3 Fed Supp. 331; *Holderness* v. *Commissioner*, 86 Fed. (2d) 137; *Commissioner* v. *Chase National Bank of New York*, 82 Fed. (2d) 157; certiorari denied, 299 U. S. 552; *Porter* v. *Commissioner, supra*; *Witherbee* v. *Commissioner*, 70 Fed. (2d) 696.

Under the trust instrument of December 24, 1923, Milton Hay Brown reserved a power exercisable by will to change the devolution of the property contributed by him to the trust. If that power had not been exercised his three children would have inherited a right to receive the income of Milton Hay Brown's share of the trust estate and also to receive their portions of the corpus. Milton Hay Brown had, however, reserved the right to control the devolution of his interest in the trust estate. He could have cut off any one or all three of his children and his wife and have named his sisters or any other descendants of Kate Hay Brown to receive his interest in the trust property. This power of control over the trust property warrants the inclusion in the gross estate of the property which he transferred to the trust. *Dort* v. *Helvering*, 69 Fed. (2d) 836; certiorari denied, 293 U. S. 569. It was immaterial whether the power which he retained was a special power or a general power. So long as he had the power to control the course of the devolution of the property, it was includable in his gross estate under section 302 (d) of the applicable statute.

The only question remaining for decision is whether the respondent was correct in including in the decedent's gross estate the one-ninth interest in the trust estate which represented a one-third interest in the trust estate owned by Stuart Brown up to the date of his death in 1924.

Prior to the creation of the trust on December 24, 1923, Stuart Brown had an undivided one-third interest in fee in the estate of Kate Hay Brown. Joining with his children he transferred this property to the trust on December 24, 1923, with the right to receive the income for life and with the further right to say who of the descendants of Kate Hay Brown should receive his share upon his death.

He died in 1924 without exercising such limited power of appointment. Upon his death his three children, one of whom was the decedent in this proceeding, each succeeded to one-third of his one-third interest in the trust estate or a one-ninth interest in the total trust estate. The decedent had the right during his life to receive and did receive the income from this one-ninth interest. He also had by virtue of the trust instrument a limited power of appointment in respect of that one-ninth interest the same as he had formerly possessed with respect to the two-ninths interest transferred by him to the trust. It is clear that if Stuart Brown had deeded to Milton Hay Brown a right to receive for life one-third of the income of his share of the trust estate, the value of that one-third interest would not be includable in the gross estate; for the life estate would have come to an end at his death and no property would be transferred from the dead to the living as the result of his death. *May* v. *Heiner*, 281 U. S. 238. The gift would have been made prior to the amendment of the estate tax law on March 3, 1931, and hence the amendment would not control. *Hassett* v. *Welch*, 303 U. S. 303. There can be no difference between a gift by deed of a life interest and an inheritance of a life estate. See *Morsman* v. *Burnet*, 283 U. S. 783. But Milton Hay Brown also acquired upon the death of his father a limited power of appointment in respect of the remainder interest in one-ninth of the trust estate acquired by him from his father. The value of a limited power of appointment is not includable in the gross estate. *Farmers' Loan & Trust Co.* v. *Bowers* (C. C. A., 2d Cir.), 29 Fed. (2d) 14; *Whitlock-Rose* v. *McCaughn*, 21 Fed. (2d) 164; *Leser* v. *Burnet* (C. C. A., 4th Cir.), 46 Fed. (2d) 756.

The question arises as to whether the inheritance by Milton Hay Brown of a life estate coupled with a limited power of appointment as to the remainder interest warrants the inclusion of the one-ninth interest in his gross estate. We think it does not.

The simple facts are that the interest in the corpus of the trust estate owned by his father, Stuart Brown, never became a part of the decedent's estate. He simply had a right to receive the income for

life from one-third of his father's interest in the trust estate, with a limited power of appointment with respect thereto. Since the property never became a part of the decedent's estate, there was no transfer of that property from the dead to the living as a result of the death of Milton Hay Brown. If he had not exercised the limited power of appointment his children would have succeeded to his share of his father's interest in the trust estate as a result of the conveyance by Stuart Brown to the trust estate in 1923.

The respondent contends, however, that the entire one-third interest in the trust estate over which Milton Hay Brown had a limited power of appointment up to his death in 1935 is includable in the gross estate by virtue of paragraph twenty-four of the trust instrument. That paragraph gave to the three children of Kate Hay Brown, with the written consent of Stuart Brown, if living, and of Logan Hay, if living, the power to revoke in whole or in part all or any of the trusts in the instrument and to appoint and direct that the entire trust estate or any part or parcels then held under the instrument should be conveyed absolutely and in fee simple to such person, persons or corporations as directed by the instrument of revocation.

The only applicable provision of the taxing act which requires the inclusion in the gross estate of transfers of property where there is a power of revocation is section 302 (d), and that, as above pointed out, refers only to transfers by "the decedent." It may be true, however, that where a decedent has power by an instrument of revocation to bring property under his own dominion and control, the value of such property may be included in the gross estate under section 302 (a) of the statute. That requires the inclusion in the gross estate of the interest in property "of the decedent at the time of his death." We do not think, however, that a power of revocation which may not be exercised by the decedent alone could constitute an interest in property within the meaning of subdivision (a).

The case of *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, involved seven trusts created by the decedent. The Supreme Court held that two were taxable because subject to a power of revocation in him alone. In each of the others the decedent reserved a power to limit, change, or modify, to be exercised in four of the trusts by joint action of himself and a single beneficiary, and in the remaining one by himself and a majority of the beneficiaries acting jointly. As the title was put beyond the decedent's control at the time of the creation of the trust instrument, the Supreme Court held that these transfers were not includable in the gross estate.

In *Mackay* v. *Commissioner* (C. C. A., 2d Cir.), 94 Fed. (2d) 558, it was held that the power to revoke which was not exercisable by the decedent alone rendered transfers made by the decedent (not in contemplation of death) beyond the pale of the statute, where, as

here, the trust was created prior to the effective date of the Revenue Act of 1924.

The decedent's two sisters had an interest in the trust estate. The sole purpose for the creation of the trust estate in 1923 was to keep the interests of the heirs of Kate Hay Brown together. Kate Hay Brown inherited an undivided one-half interest in the estate of her father, which consisted of many farms and other pieces of real estate. The properties had never been separated between herself and her brother, Logan Hay. A joint operation of the farms and other pieces of real property was believed to be for the interest of all. Logan Hay, the decedent's uncle, had a one-half undivided interest in the many farms and other pieces of real property exactly the same as the children of Kate Hay Brown had. Presumably this was the reason that his consent was to be obtained before there could be any revocation of the trust instrument.

Since the decedent did not alone have a right to revoke the trust instrument, we think that the power of revocation contained in paragraph twenty-four does not warrant the inclusion in the gross estate of the decedent of the interest in the trust estate acquired by him from his father. *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85; *White* v. *Poor*, 296 U. S. 98; *Estate of Waldo C. Bryant*, 36 B. T. A. 669, 672.

The respondent's action is reversed in including in the gross estate of the decedent any more than a two-ninths interest in the trust estate.

Reviewed by the Board.

*Decision will be entered under Rule 50.*